**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.P. and N.P.**

**No. 20-0987** (Wood County 19-JA-194 and 19-JA-195)

**MEMORANDUM DECISION**

Petitioner Father N.P. Sr., by counsel Nancy L. McGhee, appeals the Circuit Court of Wood County's November 6, 2020, order terminating his parental rights to H.P. and N.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Matthew E. DeVore, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying him a post-dispositional improvement period, terminating his parental rights when the DHHR failed to make reasonable efforts to reunify the family, and failing to enter a sufficient dispositional order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition against the parents alleging that they failed to provide a safe and hygienic home for then two-year-old N.P. and then-one-year-old H.P. Specifically, the DHHR alleged that law enforcement officers arrested the parents for armed robbery after they robbed and beat a man in their home in the presence of the children.[2] Officers found the home in a filthy and deplorable condition and took pictures for evidence. The DHHR investigated and found a lack of child safety measures, such as baby gates

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner remained incarcerated throughout the proceedings.

for stairs. The DHHR worker also observed dog feces on the floor, rotting food, cigarette butts, and other debris and clutter throughout the home. She also observed the children to be filthy and foul smelling. The home had no cribs and the children were sleeping on mattresses on the floor. The DHHR alleged that the children needed medical care for severe diaper rash, severe infections, and for splinters in their feet. Although the DHHR did not include specific allegations concerning substance abuse, the petition did allege that law enforcement officers found drug paraphernalia in the home. The DHHR concluded that the parents neglected the children's hygienic and medical needs and failed to provide adequate, safe housing for the children. Thereafter, petitioner waived his preliminary hearing.

The circuit court held a series of contested adjudicatory hearings over the course of several months, from November of 2019 to June of 2020. First, the DHHR presented the testimony of the investigating DHHR worker who stated that when she arrived at the house, petitioner was being arrested and she was unable to speak to him. She testified that the first thing she noticed about the house was the foul odor caused by animals in the home and dog feces and urine on the floors. She stated that there was no furniture, but there were clothes in bags and general clutter throughout the house. She described the kitchen as dirty with soiled dishes in the sink and rotting food and clutter on the counters. The worker explained that there were hazards to the young children such as strings of lights and electrical cords next to the children's play area. Regarding the children's hygiene, she stated that N.P. had dirt caked under his nails and ill-fitting clothing. He also had rashes on his hips because his diaper was too small and had such deep splinters in his feet that they could not be removed. Also, H.P.'s onesie was too small and she had blue dye on the bottoms of her feet. H.P. had such a severe yeast infection that she required medical treatment and cried when she urinated. It was obvious to the worker that neither child had been bathed in a long time. Through this witness, the DHHR admitted several photos of the home and children that the worker took as part of her investigation. Next, a law enforcement officer testified that when he entered the home to arrest the parents, he observed a child sitting on the floor near dog feces and urine. He described a foul smell from rotting food and garbage throughout the home. Through the officer's testimony, dozens of pictures of the home depicting its state at the time of the parents' arrest were admitted into evidence.

In June of 2020, the circuit court heard arguments from counsel, and the DHHR specifically requested that the circuit court adjudicate petitioner based upon "the poor conditions of the home[,] the safety issues that were there[, and petitioner's] failure to provide adequate and safe housing." The court responded affirmatively and stated, "Yeah. What I have in my notes is that [the children] were exposed to . . . physical violence; children poor hygiene; house not clean or safe; drug paraphernalia found; and both parents were arrested for armed robbery. So with that, I find abuse and neglect." Having heard all the evidence and arguments of counsel, the circuit court adjudicated petitioner as an abusing parent. In its adjudicatory order, the circuit court specifically found that "[t]he Respondent Father [N.P. Sr.] failed to provide appropriate safe, adequate housing for his children" when it adjudicated him as an abusing parent.

In July of 2020, the DHHR submitted a memorandum indicating that petitioner remained incarcerated with no expected release date and recommended the termination of his parental rights. Having previously accepted petitioner's guilty plea to first-degree robbery, the circuit court sentenced petitioner to serve an alternative sentence of six months to two years at the Anthony

2

Center for Youthful Offenders ("Anthony Center") in September of 2020. By October of 2020, the DHHR submitted an updated memorandum stating that petitioner remained incarcerated and was, therefore, unable to participate in services that would correct the conditions of abuse and neglect.

Petitioner filed a motion for a post-dispositional improvement period on November 4, 2020. The same day, the circuit court held a final dispositional hearing wherein petitioner failed to appear, but was represented by counsel. The circuit court took judicial notice of all prior evidence. The DHHR argued that petitioner had been incarcerated throughout the entirety of the proceedings and was unable to participate in services designed to remedy the conditions of abuse and neglect. Petitioner's counsel put forward no evidence in support of the motion for a post-dispositional improvement period but proffered that petitioner would be able to participate in parenting classes at the Anthony Center. Counsel stated that petitioner felt like he was "being penalized because the mother didn't do anything," referring to the mother's failure to successfully complete her improvement periods and ultimately having her parental rights terminated. Upon hearing counsel's arguments, the circuit court denied petitioner's motion for a post-dispositional improvement period. In its final dispositional order, the court found that the DHHR had made reasonable efforts to reunify the family "to the extent possible, given [petitioner's] incarceration during the entire duration of the case." By the same order, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that he could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the November 6, 2020, dispositional order terminating his parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court's adjudicatory findings on the record and within the adjudicatory order were insufficient and failed to comply with Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code §

---

[3]The mother's parental rights were also terminated below. According to respondents, the permanency plan is adoption by the children's foster family.

49-4-601(i).[4] Petitioner specifically takes issue with the circuit court's statement on the record regarding the children's exposure to physical violence and that there was drug paraphernalia in the home. He further argues that the court's findings that the children had poor hygiene and that the house was unsafe and unclean were not supported by specific facts. Additionally, petitioner argues that "merely being arrested does not constitute abuse or neglect" and that the DHHR failed to prove that petitioner knew of H.P.'s severe yeast infection. Based upon the lack of specific facts in the circuit court's findings, petitioner argues that the record is insufficient for review. We disagree and find no error in petitioner's adjudication.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Additionally, pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose

physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

---

[4]Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, in relevant part, that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)." Further, West Virginia Code § 49-4-601(i) provides the following:

*Findings of the court*. -- Where relevant, the court shall consider the efforts of the department to remedy the alleged circumstances. At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent of the children. The evidence presented at the adjudicatory hearings below showed that the children did not receive adequate hygienic care, as the DHHR worker testified that the children were filthy with sores and rashes from ill-fitting diapers or pull-ups. The worker further stated that both children smelled foul and obviously had not been bathed in quite some time. Most concerning was the evidence that H.P. had such a severe yeast infection that she required medical treatment and cried when she urinated. On appeal, petitioner argues that there was no evidence that he was aware of this yeast infection, but his knowledge of this issue was unnecessary to demonstrate neglect in this regard. On the contrary, the fact that petitioner may have been unaware of a medical condition that caused the child so much pain when urinating that she cried and was readily apparent to the DHHR upon its investigation demonstrates the severity of petitioner's neglect. Also, N.P. had multiple splinters in his feet, some of which were embedded so deep in his skin that they were unable to be removed. In short, the record overwhelmingly contradicts petitioner's assertion that there were insufficient facts to support his adjudication in regard to his neglect of the children's hygienic needs, and he is entitled to no relief.

Regarding the home, the evidence presented below clearly showed that the house was filthy, cluttered, unsafe, and unclean. The DHHR worker and the law enforcement officer testified that there were dog feces and urine on the floor, the kitchen had rotting food and unwashed dishes piled in the sink, the home smelled foul from various sources including garbage, and that there were hazards to the young children such as strings of lights and electrical cords next to their play area. In addition to the testimony of the DHHR worker and the law enforcement officer, numerous photos of the children's poor hygienic condition and the state of the house were admitted into evidence. Notably, petitioner produced no contradictory evidence at the adjudicatory hearings to rebut the allegations against him.

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). The overwhelming evidence produced at the adjudicatory hearings below supports the circuit court's finding that "[t]he Respondent Father [N.P. Sr.] failed to provide appropriate[,] safe, adequate housing for his children" when it adjudicated him as an abusing parent. Further, the record shows that the DHHR specifically requested that the circuit court adjudicate petitioner based upon "the poor conditions of the home[,] the safety issues that were there[, and petitioner's] failure to provide adequate and safe housing." To this request, the court answered affirmatively and noted the children's poor hygiene and the unclean and unsafe condition of the home.

Regarding the court court's statement about other issues such as physical violence, the parents' arrests, and drug paraphernalia in the home, we find no error. We have held that

"[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005). Based upon our review of the record, we find that there were specific facts alleged to adjudicate petitioner based upon an unclean, inappropriate, and unsafe home for the children as well as the children's poor hygiene, and we find no error in petitioner's adjudication.

Next, we address petitioner's argument that the circuit court erred in denying his motion for a post-dispositional improvement period. In support, petitioner contends that he pled guilty to first-degree robbery in return for alternative sentencing at the Anthony Center where he would have the ability to take parenting classes and substance abuse classes—classes typically offered during an improvement period. Petitioner also contends that the DHHR could have provided him with a plethora of services despite his incarceration. Finally, petitioner claims that he would be released after nine months, which would coincide with the granting of a post-dispositional improvement period and an extension thereof. However, we find that petitioner is entitled to no relief.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Additionally, we have discussed the ability of incarcerated parents to correct the conditions of abuse and neglect.

In some cases, a parent who is incarcerated may under the circumstances still be able to correct conditions of abuse and neglect 'in the near future' through participation in an improvement period or otherwise. In other cases, incarceration may unreasonably delay the permanent placement of the child deemed abused or neglected, and the best interests of the child would be served by terminating the incarcerated person's parental rights.

*Cecil T.,* 228 W. Va. at 97, 717 S.E.2d at 881.

Petitioner claims that he would be released after serving nine months and, therefore, he should have been awarded eight months for an improvement period at the dispositional hearing, as he had served one month of his sentence by that time. Firstly, this contention is mere speculation

as the sentencing order indicates that he could serve anywhere between six months and two years at the Anthony Center. Indeed, in his brief, petitioner concedes that there is no guarantee that he would be released within eight months of the final dispositional hearing. Secondly, petitioner's argument for a post-dispositional improvement period wholly disregards the children's best interest as well as the statutory timeframes for child abuse and neglect matters.

> Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child[ren]'s best interests to extend the time limits contained in this paragraph.

W. Va. Code § 49-4-610(9). According to the record, the children were removed and placed in foster care in October of 2019. Petitioner filed his motion for a post-dispositional improvement period on November 4, 2020, the same day as the final dispositional hearing. At that time, the children had been in foster placement for approximately thirteen months. Accordingly, a post-dispositional improvement period would have caused the children to remain in foster care for more than fifteen months and their permanency would be delayed beyond the statutory limits and delayed even further if petitioner served longer than his speculated nine months.

Moreover, petitioner wholly failed to meet his burden that he would initiate and complete all the terms of an improvement period while at the Anthony Center. *See* W. Va. Code § 49-4-610(4). As set forth above, petitioner put forth no evidence in support of his motion for an improvement period at the dispositional hearing. Instead, petitioner's counsel merely proffered that petitioner could potentially participate in parenting classes. This is simply insufficient to satisfy the applicable burden for obtaining an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-dispositional improvement period.

Additionally, petitioner argues that the circuit court erred in terminating his parental rights when the DHHR failed to make reasonable efforts to reunify the family due to his incarceration. Petitioner contends that the DHHR's failure to provide him with remedial services constituted a violation of the DHHR's statutory duty. Petitioner cites *In re Edward B.*, 210 W. Va. 621, 631, 558 S.E.2d 620, 630 (2001), wherein the circuit court failed to make statutorily required findings regarding whether the DHHR made reasonable efforts to reunify the family, as it failed to include a description of what efforts were made or that such efforts were unreasonable due to specific circumstances. However, unlike the circuit court in *Edward B.*, the court below made a specific finding in its final dispositional order that the DHHR had made reasonable efforts to reunify the family "to the extent possible, given [petitioner's] incarceration during the entire duration of the case." The court's dispositional order further found that continuation in the home was contrary to the children's best interest due to petitioner's continued incarceration stemming from his first-degree robbery conviction. According to *Edward B.*, this finding is sufficient as it included "a description of what efforts were made or that such efforts were unreasonable due to specific circumstances." *Edward B.*, 210 W. Va. at 631, 558 S.E.2d at 630; *see also* W. Va. Code § 49-4-604(c)(6)(C)(iv).

Likewise, petitioner contends that the circuit court's order failed to explicitly state factual findings to support its conclusion that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. However, at the final dispositional hearing the court noted that petitioner had been incarcerated for over a year and terminated his parental rights based upon all prior evidence presented and the arguments of counsel. Based upon petitioner's inability to participate in services, it is clear that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. West Virginia Code § 49-4-604(d)(3) states that a circumstance in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes situations where

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

As noted above, petitioner had been incarcerated since the initiation of the abuse and neglect proceeding, and the record indicates that his sentence was between six months to two years at the Anthony Center, which was an alternative sentence for his first-degree robbery conviction. Due to his incarceration, petitioner was precluded from following through with any family case plan developed below as discussed above. As such, the circuit court did not err in terminating petitioner's parental rights pursuant to West Virginia Code § 49-4-604(c)(6).

> Finally, this Court has previously held as follows:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3. Based upon this holding, it is clear that the circuit court was permitted to terminate petitioner's parental rights due to the length of his incarceration, especially in light of the children's best interests and their need for permanency, security, stability, and continuity. This is supported by the fact that, at the time of disposition, the children had already been in foster care for approximately one year. The children would have remained in foster care for a minimum of twenty-one months awaiting petitioner's release, assuming that he would be released after the minimum term of six months at the Anthony Center. Indeed, the appendix shows that the youngest child in this matter was three years old at disposition.

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously

8

threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 4 (citation omitted). Based upon our prior holdings and the evidence below, the Court finds no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: August 27, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton